## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES DOUGLAS YODER,
#A97771,

              Plaintiff,

v.

ALFONSO DAVID,
BRANDON EDWARDS,
DANIEL MONTI,
JANE DOE,
KIM JOHNSON,
JOHN/JANE DOE,
ILLINOIS DEPT OF CORRECTIONS,
and
WEXFORD HEALTH SOURCES, INC.,

              Defendants.

Case No. 21-cv-1385-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Charles Douglas Yoder, an inmate of the Illinois Department of Corrections who is currently incarcerated at Shawnee Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Yoder claims that he is being denied adequate medical treatment for various medical conditions. Warren seeks monetary damages and injunctive relief in the form of a guardian assigned to supervise his care.

Although Yoder filed the Complaint on November 5, 2021, he continued to file "addendums" to the Complaint with the last one being filed on February 14, 2022. Generally, the Court does not allow piecemeal amendments to a complaint. An amended complaint supersedes and replaces the original complaint and renders the original void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). However, the Court will read the allegations

made in the Complaint and addendums (Doc. 1, 14, 18, 21, 25, 26) together.[1] The motions for

addendums are granted as a one-time courtesy. (Doc. 14, 18, 21, 25, 26). Going forward, Yoder is

advised that an amended complaint must stand on its own and include all allegations against all

defendants.

The Complaint and addendums are now before the Court for preliminary review pursuant

to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous,

malicious, fails to state a claim upon which relief may be granted, or requests money damages

from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. §

1915A(b). At this juncture, the factual allegations of a pro se complaint are to be liberally

construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### COMPLAINT

Yoder alleges the following: Prior to his arrest on April 24, 2021, he has a well-documented

history of the following medical issues:

### 1. *Left Shoulder*

In 2014, Yoder was diagnosed with a soft tissue tear in his left shoulder. After diagnosis,

he was referred to an Eastern Illinois University Orthopedic Shoulder Surgeon. He received

steroid injections, physical therapy, and eventually surgery was performed to repair the

tear.

### 2. *Right Shoulder*

At some point, Yoder began experiencing extreme pain in and an inability to use his right

arm. In January 2021, MRI results showed one soft tissue tear, two suspected soft tissue

tears, and degenerative and arthritic bone conditions. Yoder was referred to an orthopedic

---

[1] *See Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018).

surgeon who ordered x-rays, cortisone steroid injection, medication, and physical therapy. Because two additional tears were suspected, the treating doctors wanted an additional set of MRIs that would produce better images. Shortly after his first two consultations and treatments, Yoder was arrested and did not receive the follow-up diagnostic testing.

### 3.   *Umbilical Hernia*

Yoder was diagnosed with an umbilical hernia in January 2020. In March 2021, he had hernia repair surgery.

### 4.   *Lumbar Spine, Degenerative Disk Disease*

In 2014, after complaining of lower back pain, Yoder was diagnosed with degenerative disk disease ("DDD"). He was referred to a pain management clinic and received three rounds of epidurals into his spine. From 2015 until 2021, Yoder received ongoing treatment for the degenerative disk disease from numerous doctors, surgeons, hospitals, and clinics. In February 2021, he received an MRI. The MRI showed a herniated disk, a bulging disk, and root impingement. After additional testing and consultations, Yoder chose to have lumbar spine surgery. The surgery was to be scheduled following the hernia repair surgery in March 2021. Because of his arrest, he did not receive the surgery.

### 5.   *Enlarged Prostate*

In 2015, Yoder was diagnosed with an enlarged prostate and prescribed Flomax, which he continued to take until his incarceration.

### 6.   **Trigger Finger**

Yoder suffers from a painful condition, commonly known as trigger finger. The condition prevents him from using his hands.

Yoder was arrested on April 24, 2021 and transferred to Shawnee on July 21, 2021. Since his arrival at Shawnee, he has been denied treatment for his medical conditions.

As part of the intake process at Shawnee, Yoder was seen by a nurse who asked if he had any medical issues. (Doc. 1, p. 12). Yoder explained his medical conditions and pain, and his need for further treatment and medication. He watched the nurse record that he suffered from chronic pain due to post hernia repair surgery complications, lumbar spine DDD issues, and right shoulder and prostate issues. Under "doctor's referral," the nurse wrote "Dr. David." (*Id.*).

The next day, on July 22, 2021, Yoder began submitting requests to be seen by a medical professional for his serious chronic illnesses and conditions. (Doc. 1, p. 12). Yoder was called to nurse sick call on July 28, 2021. The nurse filled out various protocol forms documenting Yoder's medical conditions. She informed Yoder that both Wexford Health Sources, Inc. ("Wexford") and Shawnee had required protocols and forms that she "had to go by." (*Id.*). The nurse recorded details regarding Yoder's abdominal pain, back pain, and urinary tract infection. (*Id.* at p. 13). Yoder informed her that he also suffered from debilitating shoulder pain and feet issues, but she responded she had reached the limit of recording three medical conditions, as designated in the protocol forms. (*Id.*). The nurse referred Yoder to Dr. David. (*Id.* at p. 14).

Dr. David refused to see Yoder on July 29, 2021. (Doc. 1, p. 14). The record states that "MD requests to reschedule for 8/2." (*Id.* at p. 78). On August 2, 2021, Yoder's appointment was again canceled. In the medical records on August 2, note, "request medical records regarding abd hernia repair and mesh in April 202. Inappropriate referral…records for M.D. when received." (*Id.* at p. 14, 81). After being refused to be seen by Dr. David, despite three referrals, Yoder describes his pain and frustration as "palpable." (*Id.* at p. 14-15).

At some point, Yoder signed medical forms authorizing the release of his medical records from his previous providers. (Doc. 1, p. 24). Records regarding his prostate issued were received

Page 4 of 15

around August 18, 2021. (Doc. 18, p. 2). The authorization forms were faxed to his primary care physician and to the surgeon who performed his hernia surgery on August 17, 2021, and August 26, 2021. (Doc. 1, p. 24).

On August 11, 2021, Yoder had an appointment with another nurse and had to explain again all of his medical issues. (Doc. 1, p. 15). The nurse referred him to Dr. David. Yoder was then scheduled to be seen on August 13, 2021, by Nurse Practitioner Edwards. While waiting to be seen in the healthcare unit, Yoder observed Edwards walking in and out of rooms "laughing up and down the hallway" and "horse-playing." (*Id.* at p. 16). After waiting two hours, his appointment was canceled. Yoder then went to the officer desk, the desk officer signed his movement authorization pass and allowed him to leave by "buzzing him out." (*Id.*).

That evening, Nurse Jane Doe came to Yoder's cell to deliver a note from Edwards. (Doc. 1, p. 17). Nurse Jane Doe was loud, disrespectful, and mean-spirited. She told Yoder that if he had not stormed out of the healthcare unit, then Edwards would have explained why he could not see Yoder that day. Nurse Jane Doe then shoved a paper at Yoder. The note stated that Edwards was awaiting Yoder's medical records and that the medical records office would be contacting Yoder in a week. (*Id.* at p. 17, 84). Again, it was noted in his medical records "request for records from medical records of previous hospital." (*Id.* at p. 18).

From August 13, 2021 through September 6, 2021, Yoder wrote grievances, letters, and request slips complaining about the denial of medical treatment by Dr. David and Edwards. (Doc. 1, p. 18). On September 6, 2021, Yoder was examined by a nurse. He complained that his hernia staples had torn and his hernia was coming back. He also stated that he was experiencing burning, aching, and knife-like pain. The nurse again was unable to treat him and referred Yoder to see Edwards. (*Id.* at p. 18-19).

Yoder had an appointment with Edwards on September 9, 2021. (Doc. 1, p. 19). At the

appointment, Edwards asked Yoder, "what's going on with you?" Yoder responded, "You're kidding me right? You have my file right in front of you. This is the second time that you have had my file that I know of. And you want me to guess why you are here?" Edwards then replied, "stop yelling at me!" Even though Yoder was not yelling. Edwards then said, "Your file says you have arthritis." (*Id.*). Yoder "stared at Edwards in total disbelief." (*Id.* at p. 20). Then Edwards stated, "I'm here to help you." Yoder responded, "that's a first for you!" Edwards then sent Yoder back to his cell. Edwards falsely recorded in the medical record that Yoder was agitated, continued to yell, was told to lower his voice, and then chose to leave the exam room. (*Id.*).

After the appointment with Edwards, Yoder continued submitting request slips, letters, and grievances. (Doc. 1, p. 20). On October 3, 2021, Yoder met with Nurse Jane Doe at the healthcare unit. She was unprofessional and disrespectful. (*Id.*). Nurse Jane Doe asked Yoder, "what's your problem?" (*Id.* at p. 21). Yoder began telling her that he had repeatedly requested to be seen by a doctor for complications associated with his hernia repair surgery and tried to tell her the history of his medical issues. She cut him off and told Yoder, "I have a lot to do. I'm busy and I don't have time for this." Yoder asked if she intended to do anything to help him, and Nurse Jane Doe responded, "No! All you're going to do is write grievances anyway!" (*Id.*).

On October 22, 2021, Yoder had an appointment with Dr. David. Dr. David had reviewed Yoder's medical file but still asked Yoder "what are your issues?" (Doc. 1, p. 22). Yoder asked if Dr. David had received the requested records from the outside medical facilities, and Dr. David stated he had received some records. (*Id.*). When Yoder tried to explain the issues with his hernia, Dr. David refused to believe him that his hernia was repaired by having "mesh stapled to [his] abdomen." (*Id.* at p. 23). Dr. David ignored Yoder's scars and swollen and red abdomen and said he would have to see the medical records before treating Yoder. (*Id.* at p. 24). Yoder showed Dr. David the entries in his records from August 17 and August 26 recording that Records Director

Page 6 of 15

Kim Johnston had faxed Yoder's signed medical authorization form to his primary care doctor and surgeon. Yoder pointed out the records in the medical file documenting his hernia. Dr. David again ignored the records and repeated he would have to have the records before doing anything. (*Id.*).

Next, Yoder attempted to explain his spinal issues and degenerative disk disease. (Doc. 1, p. 25). Dr. David stated he needed the records. Yoder stood up and asked Dr. David to go through the records in the medical file. (*Id.*). While going through the records, Yoder saw several records documenting his spinal treatments and the radiologist's report. (*Id.* at p. 26). Yoder also showed Dr. David the records documenting his pain management, including various prescriptions he had been prescribed in the past to treat his pain. (*Id.* at p. 27). Dr. David would not consider referring Yoder to a specialist for his spine issues, ordering further diagnostic testing, or prescribing Yoder medication for his pain other than Motrin. (*Id.*).

Yoder next asked Dr. David to read the radiology report regarding the soft tissue tears in his right shoulder and told him the history of his left and right shoulders. (Doc. 1, p. 28). Yoder told Dr. David that an additional MRI was needed to identify the seriousness of the partial tear and clarify the two suspected tears. Yoder explained that the injury causes his right arm to lock into place and causes him pain. (*Id.*). Dr. David stated he would have the records department order the records, even though he had just read the 2021 radiology report of Yoder's right shoulder. (*Id.* at p. 29). Yoder did not understand what additional records were needed.

Yoder then explained to Dr. David that because of his enlarged prostate, he is in pain and cannot urinate. He requested Flomax medication, which had historically alleviated his symptoms. (Doc. 1, p. 30). Dr. David said he would need to see Yoder's medical records. Yoder had Dr. David again search through the file, and Dr. David found the medical record. Dr. Yoder immediately said he would prescribe Flomax that day. (*Id.*).

During the appointment, Dr. David told Yoder that because of Wexford and IDOC

protocols, there are certain treatments he cannot provide for Yoder regardless of evidence and pain. (Doc. 18, p. 2). Yoder states that Wexford has an unwritten policy of putting profits before an inmate's health care issues. (Doc. 1, p. 34).

Yoder continues to not receive treatment for his shoulders, back, hernia, or trigger finger. (Doc. 1, p. 33; Doc. 26, p. 3). Although Shawnee medical records indicate that Yoder has been prescribed Neurontin and gabapentin for his back pain, as of January 10, 2022, he had not received the medication. (Doc. 25, p. 2). Yoder told Dr. David he had not received the medicine, and Dr. David responded, "Its not my fault. I ordered it for you." (*Id.* at p. 3).

**PRELIMINARY DISMISSALS**

Yoder lists the "Illinois Department of Corrections (Rob Jeffreys Director)" as a Defendant. (Doc. 1, p. 3). However, he has not stated a claim against either entity. The Illinois Department of Corrections is not a "person" who can be sued pursuant to Section 1983 for money damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the Illinois Department of Corrections will be dismissed with prejudice as a defendant.

As for Director Rob Jeffreys, Yoder has not asserted any allegations or described the involvement by Jeffreys in his medical care. Naming Jeffreys as a defendant in the case caption is not sufficient to assert liability. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998). Furthermore, Section 1983 does not impose a "general duty of rescue," and there is no *respondeat superior* liability. *Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009). To be held liable a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Thus, Jeffreys cannot be held liable simply because he is in charge or responsible for the department or solely because he concurred in the denial of Yoder's grievances. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) For these reasons, Jeffreys is dismissed without prejudice.

### DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the

following counts:

Count 1:     Eighth Amendment claim against David, Edwards, Jane Doe,
             Johnson, Wexford, Monti, and John/Jane Does for deliberate
             indifference to Yoder's serious medical needs regarding his hernia
             and conditions affecting his shoulders, back, prostate, and fingers.

Count 2:     First Amendment claim against Jane Doe and Monti for retaliating
             against Yoder for writing grievances regarding his medical care.

Count 3:     Fourteenth Amendment claim against Monti, Johnson, and
             John/Jane Does for failing to investigate and properly process
             Yoder's grievances.

The parties and the Court will use these designations in all future pleadings and orders, unless

otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

**Complaint but not addressed in this Order should be considered dismissed without prejudice**

**as inadequately pled under the *Twombly*[2]  pleading standard.**

### Count 1

Count 1 will proceed against providers David, Edward, Jane Doe, and Wexford for failing

to treat Yoder's medical conditions. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Woodward*

*v. Corr. Med. Serv. of Ill.*, Inc., 368 F.3d 917, 927 (7th Cir. 2004).

As for the grievance officials, Count 1 will be allowed to proceed against Warden Monti

but will be dismissed as to Johnson and John/Jane Does. Ordinarily, an administrative official who

only reviews an inmate's grievances over the alleged misconduct of another person is not

"personally responsible" for the complained-of conduct and does not incur liability in a civil rights

case for denying the grievance. The Seventh Circuit instructs that the alleged mishandling of

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson,* 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996).

Alternatively, a defendant "is personally responsible 'if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent.' " *Wilson v. Warren County, Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). *See also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) .

Count 1 will proceed against Warden Monti, who Yoder alleges not only reviewed his grievances but received dozens of letters and requests slips from Yoder seeking medical treatment. *See Perez,* 792 F. 3d at 782. However, because Yoder's only allegations against Johnson and John/Jane Does is that they did not properly handle is grievances (*see* Doc. 1, p. 3, 34), he has not stated an Eighth Amendment claim for deliberate indifference, and Count 1 is dismissed without prejudice as to these defendants.

## Count 2

Yoder claims that in retaliation for filing grievances about his medical issues and lack of treatment lack of treatment Nurse Jane Doe denied him medical care and Warden Monti denied him a job assignment. (Doc. 1, p. 22, 31-31). These allegations are sufficient to state a claim for retaliation, and Count 2 will proceed against Nurse Jane Doe and Monti. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

## Count 3

To the extent Yoder is claiming that his due process rights were violated due to the mishandling of his grievances, the claim is dismissed. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by

the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir.2011) (citations omitted). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir.1992); *Shango v. Jurich,* 681 F.2d 1091, 1100–01 (7th Cir.1982). Thus, Count 3 is dismissed with prejudice.

### IDENTIFICATION OF THE UNKNOWN DEFENDANT

Yoder will be allowed to proceed with Counts 1 and 2 against Nurse Jane Doe. This defendant must, however, be identified with particularity before service of the Complaint can be made. Yoder will have the opportunity to engage in limited discovery to ascertain his identity. *Rodriguez*, 577 F.3d at 832. After Defendants have filed answers to the Complaint, the Court will enter a scheduling order setting dates and guidelines for discovery. Once the name of this unknown defendant is discovered, Yoder must file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

### MOTION FOR RECRUITED COUNSEL

Yoder has filed a motion for recruitment of counsel (Doc. 2), along with two addendums. (Doc. 17, 20). As a litigant in a civil case, Yoder has no right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). However, a District Court "may request an attorney to represent any person *unable to afford counsel*." 28 U.S.C. § 1915 (e)(1) (emphasis added). Yoder has not submitted any documentation to demonstrate to the Court that he is indigent. As he has paid the filing fee in full and is not proceeding *in forma pauperis* in this case, the Court has no basis for concluding that he is unable to afford counsel as is required by Section 1915(e). Thus, motion is denied without prejudice.

Yoder may refile his motion but he should provide the Court an affidavit of financial status and supporting documentation such as a copy of his prisoner trust fund account. *See* Amendments

Page 11 of 15

to the Local Rules 83.9(a). To assist him in complying with this Order, the Clerk of Court will be directed to mail Yoder a blank motion for recruitment of counsel form.

### MOTION FOR COPY

Yoder has filed motions seeking a copy of his Complaint and attachments. (Doc. 16, 23). The motion is denied. The District Clerk will mail paper copies of any document only after receiving prepayment of the required fee (i.e., $.50 per page). A request for documents should be made in writing to the Clerk of Court by referring to the case number and the document number and submitting the required prepayment.

### MOTION FOR STATUS AND EXPEDITED REVIEW

Yoder's motions for status are denied as moot in light of this Order. (Doc. 24, 27, 28). His requests for expedited review are also denied. (Doc. 19, 22). If Yoder believes he is entitled to some form immediate injunctive relief, then he should file the appropriate motion.

### MOTION FOR CHANGE OF VENUE

Yoder has filed a second motion asking that his case be transferred to the District Court in Benton, Illinois pursuant to 28 U.S.C. §1404(a). (Doc. 15). He believes that the Court misinterpreted his earlier motion and that Benton would be a motion convenient location for the parties. As the Court previously explained, Section 1404(a) does not apply because Yoder is not seeking transfer this case to another district or division. (Doc. 13).

While the Court may "order any civil action to be tried at any place within the division in which it is pending," the Court finds that Yoder's motion is premature. *See* 28 U.S.C. §1404(c). Defendants have not been served and discovery has not commenced. Furthermore, during the early stages of prisoner litigation hearings are often held via video conference. There is no reason why a transfer of this case to Benton, Illinois would be more convenient for the parties, as there is no need for the parties or witnesses to travel to the courthouse at this time. *See Clemons v. Sunbeam*

*Products, Inc.,* 2013 WL 12075985 (S.D. Ill. Apr. 24, 2013) (noting that motions pursuant to Section 1404(c) are dependent on whether the case goes to trial). Accordingly, the motion for change of venue is denied.

## MOTION FOR SUBSTITUTION OF JUDGE

The Court construes the motion for substitution of judges as a motion for recusal. (Doc. 29). Yoder argues that the undersigned's failure to conduct a preliminary review of his complaint within sixty days shows bias and prejudice.

Recusal or disqualification of a judge from a case is governed by 28 U.S.C. § 455. A party's dissatisfaction with the rate of progress in the case is not one of the grounds for disqualification. Yoder has not pointed to any personal bias, prejudice or issue of impartiality on the part of the undersigned, and so, the motion is denied.

## DISPOSITION

For the reasons provided above, the motions for addendums are **GRANTED.** (Doc. 14, 18, 21, 25, 26). The Complaint, including the addendums, survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against David, Edwards, Monti, Jane Doe, and Wexford and is **DISMISSED** as to Johnson and John/Jane Does. **COUNT 2** will proceed against Monti and Jane Doe. **COUNT 3** is **DISMISSED with prejudice.** Because there are no surviving claims against Kim Johnson, John/Jane Does, and Rob Jeffreys they are **DISMISSED without prejudice**. The Illinois Department of Corrections is **DISMISSED with prejudice.**

Because Yoder's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The motion for recruitment of counsel is **DENIED.** (Doc. 2). The Clerk of Court is **DIRECTED** to send Yoder a blank motion for recruitment of counsel form.

The motions for copy are **DENIED.** (Doc. 16, 23).

The motions for status (Doc. 24, 27, 28) and the motions for expedited review (Doc. 19, 22) are **DENIED as moot.**

The motions for change of venue (Doc. 15) is **DENIED.**

The motion for substitution of judge (Doc. 29) is **DENIED.**

The Clerk of Court shall prepare for David, Edwards, Monti, Wexford, and Jane Doe (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, the addendums (Doc. 14, 18, 21, 25, 26) and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Yoder, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Yoder is **ADVISED** that he is under a continuing obligation to keep the Clerk of

Page 14 of 15

Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED: April 28, 2022**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

Page 15 of 15
