IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES YODER, #A97771, <br><br>        Plaintiff, <br><br>v. <br><br>ALFONSO DAVID, *et al.*, <br><br>        Defendants. | Case No. 21-cv-01385-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion for summary judgment on the issue of failure to exhaust administrative remedies filed by Defendant Melissa York. (Doc. 102). Plaintiff Charles Yoder filed a response in opposition. (Doc. 107). Defendant York filed a reply, and Plaintiff filed a sur-reply.[1] (Doc. 108, 109). For the following reasons, the motion for summary judgment is granted.

### BACKGROUND

Plaintiff Charles Yoder, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Robinson Correctional Center, initiated this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. In the Complaint, Plaintiff alleges that while at Shawnee Correctional Center he was denied adequate medical treatment for various medical conditions, including tissue tears in both shoulders, an umbilical hernia that was repaired

---

[1] The Local Rules of this Court provide that "[u]nder no circumstances will sur-reply briefs be accepted" and prior to filing a supplement, a party must first seek leave of the court. SDIL-LR 7.1(c). Because sur-reply briefs are prohibited and Plaintiff did not seek leave before filing his additional supplements, the sur-reply will be stricken from the docket. (Doc. 109).

in March 2021 but still causing complications and abdominal pain, lower back pain, degenerative disk disease in his spine, enlarged prostate, and "trigger finger." Following review of the Complaint pursuant to 28 U.S.C. §1915A, Plaintiff is proceeding with the following claims:

**Count 1:**    Eighth Amendment claim against David, Edwards, York, Johnson, Wexford, and Monti for deliberate indifference to Plaintiff's serious medical needs regarding his hernia and conditions affecting his shoulders, back, prostate, and fingers.

**Count 2:**    First Amendment claim against York and Monti for retaliating against Plaintiff for writing grievances regarding his medical care.

(Doc. 31).

Relevant to the motion for summary judgment currently before the Court are Plaintiff's allegations against Defendant Melissa York.[2] (Doc. 31, p. 4-6). Plaintiff claims that after arriving at Shawnee Correctional Center on July 21, 2021, he was seen by nursing staff and explained his chronic medical issues. He was referred to medical doctor and scheduled be seen by Dr. David on July 29, 2021. The appointment, however, was rescheduled for August 2, 2021. The August appointment was then canceled. Plaintiff was next scheduled to be seen by Nurse Practitioner Edwards on August 13, 2021. This appointment was also canceled. Later that evening, Defendant Nurse Melissa York came to Plaintiff's cell to deliver a note from Edwards. Plaintiff alleges that York was loud, disrespectful, and mean-spirited. York told Plaintiff that if he had not stormed out of the healthcare unit, then Edwards would have explained why he, Edwards, could not see Plaintiff that day. York shoved the note at Plaintiff. The note stated that Edwards was waiting on Plaintiff's outside medical records and would be contacting Plaintiff in a week. Plaintiff next saw York in the healthcare unit on October 3, 2021. He alleges that she was again unprofessional and disrespectful. Plaintiff told York about his hernia repair surgery and medical issues, but she

---

[2] Melissa York is identified in the Complaint and Merit Review Order as Jane Doe. On June 6, 2022, Plaintiff filed a motion to substitute York for the Jane Doe Defendant. (Doc. 37, 44).

ignored him. York told Plaintiff she was busy and that she did not intend to help him because he was going to write grievances anyways.

On January 24, 2023, Defendant York filed a motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies prior to initiating this lawsuit. (Doc. 102, 103). Defendant York identifies three grievances relevant to Plaintiff's claims against her, Emergency Grievances #2021-09-278E, #2021-10-30E, and #2021-10-48E.

- In Grievance #2021-09-278E, dated September 22, 2021, Plaintiff grieves not receiving medical treatment and mentions that a nurse handed him a note from NP Edwards on August 13, 2021, informing Plaintiff why Edwards refused to see him.

- In Grievance #2021-10-30E, dated October 4, 2021, Plaintiff grieves that on October 3, 2021, a nurse refused to treat him or tell him her name. Plaintiff wrote that the nurse said she could refill his order for Flomax to treat his prostate symptoms, but he told her he could not get a refill for a medication the doctor had not yet ordered. The nurse then ended the encounter by saying she did not have time to argue with him and that he would just file a grievance on her like he did everyone else Plaintiff specified that this was the same nurse who was rude to him on August 13, 2021.

- In Grievance 2021-10-48E, dated October 4, 2021, Plaintiff complains that a nurse refused to treat him on October 3, 2021, stating she was not going to help him because he was just going to write a grievance on her.

All three grievances were deemed emergencies by the chief operating officer within two days of submission. (Doc. 103-2, p. 8, 12, 14). These grievances and twelve others were collectively responded to by the grievance officer on December 6, 2021. (Doc. 103-1, p. 34). The grievance officer deemed the grievances mixed. The chief administrative officer concurred. (Doc. 103-1, p. 36). Plaintiff appealed the decision to the Administrative Review Board on December 15, 2021. On January 10, 2022, the Administrative Review Board denied the grievances. (*Id.* at p. 30). York argues that Plaintiff failed to exhaust in accordance with the Prison Reform Litigation Act, 42 U.S.C. §1997e(a), since he filed suit on November 5, 2021, before the final adjudication of his

grievances was complete on January 10, 2022. (Doc. 103, p. 6). Therefore, York seeks summary judgment in her favor.

In the response in opposition, Plaintiff argues that the Defendant York's motion should be denied because (1) the issue of improperly exhausting was not raised during the exhaustion process itself; (2) the grievance officer violated the Administrative Rule 504 by waiting over two months to respond to his grievances, which results in waiver of the right to raise a failure to exhaust defense; (3) Plaintiff did completely exhaust; and (4) forcing Plaintiff to refile a new lawsuit, especially in light of the fact that he received a favorable ruling by the grievance officer, is counterproductive and a waste of time. (Doc. 107).

## LEGAL STANDARDS

### I.     Summary Judgment

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c).

### II.    Exhaustion of Administrative Remedies

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). The only exception to the exhaustion requirement is when the administrative remedies are "unavailable." *Ross v. Blake,* 578 U.S. 632, 643 (2016).

As an inmate confined in the Illinois Department of Corrections, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to properly exhaust his administrative remedies. 20 ILL. ADMIN. CODE § 504.800, *et seq*. Pertinent to this case is the regulation regarding emergency procedures. 20 ILL. ADMIN CODE § 504.840. An inmate can request a grievance to be handled on an emergency basis by forwarding the grievance directly to the chief administrative officer ("warden"). *Id.* The warden then reviews the grievance to determine if it is truly an emergency. *Id.* If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm," the warden "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." *Id*. After receiving a response from the warden, if the inmate believes that his problem or complaint has not been resolved, then he may appeal in writing to the Administrative Review Board. *Id.* at §504.850(a). When an inmate appeals a grievance deemed by the warden to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." *Id.* at §504.850(f).

The regulation stating that a grievance officer is to provide his or her findings and recommendations to the chief administrative officer within two months, "when reasonably feasible," cited to by all parties, applies to grievances filed through the normal procedures. *See* 20 ILL. ADMIN. CODE §504.830(e). Here, Plaintiff filed his grievances as emergencies. Once the

warden determines that a grievance is an emergency, there is no prescribed deadline for the warden to respond. *See Godfrey v. Harrington,* 2015 WL 1228829, at *3 (S.D. Ill. Mar. 16, 2015) (citing 20 ILL. ADMIN CODE §504.840). Based on the Code, "it is not clear how long inmates must wait to receive a response when using the emergency process." *Id.* The Seventh Circuit has "implied that inmates must wait more than two days for a response to their emergency grievance but less than fifty-one before they can file suit." *Id.* (citing *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) and *Muhammad v. McAdory,* 214 F. App'x 610, 611, 613 (7th Cir. 2007)). That being said, an emergency or imminent danger does not exempt an inmate from exhausting his administrative remedies. As stated above, exhaustion is a precondition to filing suit.

## ANALYSIS

Here, while it took the grievance officer more than two months to respond to Plaintiff's grievances, Defendants have presented evidence that Plaintiff's remedies were available and that Plaintiff was able to follow and receive responses at each stage of the process. Plaintiff does not provide a reason for filing this case before he had exhausted his claims against York. He does not allege that his administrative remedies were unavailable to him due to the delayed response to his emergency grievances or that his efforts were thwarted in some way. Plaintiff's main argument is that IDOC officials must follow their own regulations. Because the grievance officer did not follow the two-month rule, a defendant cannot raise exhaustion as an affirmative defense. This assertion is not correct. Failure to timely respond to a grievance *can* render an administrative scheme unavailable, but a delayed response does not automatically prevent an inmate from using the administrative remedies process. *See Reid v. Balota,* 962 F. 3d 325, 329 (7th Cir. 2020). Plaintiff does not explain why, if he was operating under the belief that the grievance officer had two months to respond, he file this suit against York before two months had passed – 44 days after

submitting the September 22 grievance and 32 days after submitting the October 4 grievance.[3] Nor does he assert he was in imminent danger and that is the reason why he filed the lawsuit before seeking to resolve his issues internally.[4] Because Plaintiff does not refute York's assertion and evidence that his remedies were available and does not deny that he filed this lawsuit before full compliance with the administrative process, the motion for summary judgment is granted. *See Ford,* 362 F. 3d at 398 (an inmate may not file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process).

The Court finds Plaintiff's additional arguments not well taken. The affirmative defense of failure to exhaust was properly raised in York's response to the Complaint and did not need to be raised sooner. *See* FED. R. CIV. 8(c); *Massey v. Helman,* 196 F. 3d 727, 735 n. 5 (7th Cir. 1999). And finally, while Plaintiff may feel that refiling a new lawsuit against York is a waste of time, the "court lacks discretion to resolve the claim [against York] on the merits." *Perez v. Wisc. Dep't of Corr.,* 182 F. 3d 532, 535 (7th Cir. 1999). His claims against York "must be dismissed." *Id.*

### DISPOSITION

For the reasons stated above, the Motion for Summary Judgment is **GRANTED.** (Doc. 102). The claims against Defendant York are **DISMISSED without prejudice** for Plaintiff's failure to exhaust.

The Clerk is **DIRECTED** to **TERMINATE MELISSA YORK** as a party and enter

---

[3] In the Complaint, Plaintiff asserts that from August 10, 2021, through October 20, 2021, he filed 32 grievances. (Doc. 1, p. 5). At the time of initiating this lawsuit, three grievances "have been decided." He further states the grievances filed as emergencies have been deemed medical emergencies but are still pending and have not come to a final conclusion. (*Id.* at p. 6).

[4] In his pleadings, Plaintiff alleges that he is continually being denied adequate care, but the three emergency grievances cited to by York complained of his treatment by nursing staff and not being seen by a medical doctor. Plaintiff had an appointment with Dr. David on October 22, 2021. (Doc. 1, p. 22). Albeit, Plaintiff was also unhappy with Dr. David's treatment decisions, but he was seen by a doctor as requested in the grievances. At the time of filing, Plaintiff did not request any kind of emergency relief (Doc. 31, p. 12), and there is no "reason to think that the prison's grievance procedure would take longer than judicial procedure." *Fletcher,* 623 F. 3d at 1175.

judgment in her favor at the close of this case.

The Clerk is **DIRECTED** to **STRIKE** the sur-reply at Doc. 109. The stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED:   September 14, 2023**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**
